**UNITED STATES of America, Appellee,**

v.

**Perlie Donald WORKMAN, Appellant.**

No. 77–1884.

United States Court of Appeals,
Fourth Circuit.

Argued July 21, 1978.

Decided Sept. 21, 1978.

Rehearing Denied Dec. 4, 1978.

Sam J. Ervin, Jr., and Joe K. Byrd, Morganton, N.C., for appellant.

Phillip G. Kelley, Asst. U.S. Atty., Charlotte, N.C. (Harold M. Edwards, U.S. Atty., Asheville, N.C., and Susan S. Craven, Asst. U.S. Atty., on brief), for appellee.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

Perlie Donald Workman appeals from the district court's order revoking his probation. We vacate the order and remand the case for further proceedings because revocation was based on evidence obtained by searches that violated the fourth amendment.

## I

Workman was convicted in May of 1973 on his guilty pleas to two counts of an indictment charging possession of a distillery and bootleg whiskey. The court suspended his sentences aggregating five years and placed him on probation for five years. Two of the conditions of his probation were that he not possess, manufacture, sell, or buy any illegal whiskey and that he not violate any law of the United States or North Carolina.

In a complaint filed in February, 1977, a probation officer asked the court to revoke Workman's probation for violation of these conditions. The complaint alleged that in the previous December, police officers destroyed an illegal distillery found in Workman's home. The complaint also disclosed that in a state prosecution based on this incident, the North Carolina court ruled that the search of Workman's residence was illegal because the warrant on which it was based did not comply with the fourth amendment. The state court suppressed the evidence and dismissed the case.

Two months later, the probation officer filed a second complaint alleging that

Workman possessed an illegal distillery in a building located on his property. This complaint was based on evidence discovered during a warrantless search in April, 1977, by the probation officer and an Alcohol Beverage Control agent. The officer testified that he searched the storage shed because he had a report that Workman kept a still there. He said that he did not obtain a search warrant because he believed that he did not need one.

The district court ruled that a "federal probation officer in the performance of his duties may conduct reasonable searches of a probationer and his premises without a warrant when probable cause exists." Consequently, it considered the evidence discovered during the officer's April search. The court also held that the exclusionary rule does not apply to probation revocation proceedings. It therefore concluded that it could also consider the evidence concerning the December incident notwithstanding the state court's determination that it had been illegally obtained.[1] Based on all the evidence, the court revoked Workman's probation and imposed concurrent two-year sentences.

## II

The first issue is whether a probation officer can conduct warrantless searches of his probationer's premises whenever he has probable cause. Relying primarily on *United States v. Bradley*, 571 F.2d 787 (4th Cir. 1978), decided after the district court rendered its decision in this case, and on *Martin v. United States*, 183 F.2d 436 (4th Cir. 1950), we conclude that he cannot.[2]

In *Bradley* we held "that unless an established exception to the warrant requirement is applicable, a parole officer must secure a warrant prior to conducting a search of a

parolee's place of residence even where, as a condition of parole, the parolee has consented to periodic and unannounced visits by the parole officer." 571 F.2d at 789. We also ruled that the special relationship between a parolee and his parole officer and society's interest in close supervision of the parolee serve to lower the standard for determining probable cause to obtain a search warrant but that they do not eliminate the warrant requirement. This approach is consistent with the Supreme Court's admonition that exceptions to the warrant requirement "are few in number and carefully delineated . . . ; in general, they serve the legitimate needs of law enforcement officers to protect their own well-being and preserve evidence from destruction." *United States v. United States District Court*, 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972).

We recognize the similarity between searches by probation officers and administrative searches by officials to enforce civil regulations. But as we made clear in *Bradley*, this analogy affords no reason for dispensing with a warrant. This conclusion has been buttressed by *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), in which the Court declared unconstitutional a provision of the Occupational Safety and Health Act which authorized warrantless searches of commercial premises by safety inspectors. In that case, the Court reaffirmed the important function served by warrants even when probable cause in the criminal sense is not required to obtain them.

In *Martin v. United States*, 183 F.2d 436, 439 (4th Cir. 1950), involving a forfeiture proceeding against a probationer's automobile, Judge Soper wrote:

---

1. The district court decided the case on the assumption that the state court had ruled correctly, and for the purposes of this appeal we will accept this premise. On remand the government should not be foreclosed from asserting that the December search was legal if it cares to do so. *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). We express no opinion on this point.

2. Here, as in *Bradley*, the government relies primarily on *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975), the leading case holding that a parole officer need not obtain a warrant for a reasonable search of a parolee's home. Our reasons for declining to follow *Latta* are fully set forth in *Bradley* and need not be repeated here.

There is no doubt that the Fourth Amendment protects all persons suspected or known to be offenders as well as the innocent, and it unquestionably extends not only to the persons but also to the houses of the people, whether they be residences or places of business. . . . The Amendment applies in this case to Martin, a probationer, and to his garage located near his home, although his status is a circumstance to be taken into consideration; but the question remains whether the search and seizure were unreasonable and therefore a violation of the right conferred upon him to be secured against such a search.

Consequently, in determining whether evidence seized by a probation officer without a warrant was admissible, the *Martin* court applied a traditional exception to the fourth amendment's requirement of a warrant. It admitted the evidence because the probation officer acting on probable cause made the search as an incident to his lawful apprehension of the probationer. The court did not rest its opinion on the theory that a probation officer can search a probationer's property without a warrant in the absence of exigent circumstances.

Congress has granted broad authority to probation officers, including the power to arrest without a warrant. 18 U.S.C. § 3653. Significantly, however, Congress has not authorized probation officers to conduct warrantless searches. This absence of legislative authority distinguishes probation officers from inspectors who are empowered by statute to conduct searches of certain regulated businesses without warrants. *Cf. United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

■ The restriction on a probation officer's authority to search does not preclude warrantless visits to the probationer's home or place of employment. Inherent in the probation officer's duty to "use all suitable methods . . . to aid probationers and to bring about improvements in their conduct and condition"[3] is authority to visit the probationer. A visit, however, is not a search. *Cf. Wyman v. James*, 400 U.S. 309, 317–18, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971); *Latta v. Fitzharris*, 521 F.2d 246, 256 (9th Cir. 1975) (Hufstedler, J., dissenting).

■ Nor does the lack of authority to conduct a warrantless search prohibit a probation officer from acting as any other officer in exigent circumstances. Thus he may search and seize articles as an incident to a lawful arrest. *Martin v. United States*, 183 F.2d 436 (4th Cir. 1950). Since his authority to visit places him lawfully in the probationer's home, he can seize contraband and instruments or evidence of crime in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). For his own safety, he can frisk the probationer without consent, and he can conduct a search with consent. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ Although probation officers have been accorded broad authority so they may effectively discharge their duties, *Bradley* and *Martin* establish that they must obtain search warrants in the absence of recognized exceptions to the requirements of the fourth amendment. We find in this case no occasion for departing from the precedent of those decisions.

### III

■ The government next argues that even if Workman is entitled to the protection of the fourth amendment, the evidence obtained in an illegal search should nevertheless be admitted. In support, it relies on a number of cases which have not applied the exclusionary rule to proceedings involving probationers.[4] Application of this rule

---

3. 18 U.S.C. § 3655.

4. *See, e. g., Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975); *United States v. Farmer*, 512

F.2d 160, 162 (6th Cir. 1975); *United States v. Brown*, 488 F.2d 94, 95 (5th Cir. 1973); *United States v. Hill*, 447 F.2d 817, 818–19 (7th Cir. 1971); *United States ex rel. Sperling v. Fitzpa-*

excludes evidence seized in violation of the fourth amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Its "prime purpose is to deter future unlawful police conduct" by removing the incentive to disregard the fourth amendment. *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). Another purpose, which is accorded less significance by the Supreme Court, is to preserve judicial integrity by precluding courts from basing convictions on illegally obtained evidence. *Stone v. Powell*, 428 U.S. 465, 485, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Elkins v. United States*, 364 U.S. 206, 222–23, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

■■■■ The preliminary question posed by this issue is whether a probationer has standing to invoke the exclusionary rule. Standing is restricted to the victim of a search against whom the government seeks to use evidence allegedly tainted by an unlawful search. *Alderman v. United States*, 394 U.S. 165, 171–76, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). If a person satisfies this test, his status as a probationer does not preclude application of the rule. *United States v. Bradley*, 571 F.2d 787 (4th Cir. 1978); *Martin v. United States*, 183 F.2d 436 (4th Cir. 1950). There can be no doubt that Workman has standing to invoke the exclusionary rule. The government seeks to use evidence that was unconstitutionally seized from his property to prove his violation of the court's probation order and to imprison him.

A more difficult problem is whether the nature of a probation revocation hearing requires an exception to the exclusionary rule. The answer lies in the application of the test prescribed by *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), to determine whether the rule's deterrent effect outweighs impediments to the proceedings caused by its application. *Calandra* denied extension of the exclusionary rule to grand jury proceedings. The Court's analysis of the issue balanced the potential injury to the role and functions of the grand jury against the potential benefits of applying the rule. 414 U.S. at 349–52, 94 S.Ct. 613. *Calandra* therefore teaches that in order to determine whether the exclusionary rule is appropriate for probation revocation hearings, the potential injury to the proceedings must be weighed against the potential benefits of applying the rule.

■■■■ A probation revocation hearing is adjudicative. Its first purpose is to determine whether the probationer is guilty of violating a provision of the probation order. Its second is to decide whether he should be continued on probation or be imprisoned. Although such a hearing is not a stage of a criminal prosecution, it is a criminal proceeding that may result in the loss of liberty.[5] For this reason the due process clause entitles a probationer to written notice of his alleged violation; a hearing at which the evidence against him must be disclosed; the right to present witnesses in his own behalf; and, save in exceptional circumstances, the right to confront and cross-examine adverse witnesses. If a serious ques-

*trick*, 426 F.2d 1161, 1164 (2d Cir. 1970). *Contra United States v. Hallman*, 365 F.2d 289 (3d Cir. 1966).

*United States v. Vandemark*, 522 F.2d 1019, 1025 (9th Cir. 1975), and *United States v. Winsett*, 518 F.2d 51, 55 (9th Cir. 1975), hold that the exclusionary rule should not be applied to probation revocation proceedings when the officers conducting the search did not know or had no reason to believe that the suspect was a probationer. In *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975), the court excluded from a criminal trial evidence

discovered during an illegal search of a probationer's property by law enforcement officers, but noted that the evidence would have been admissible if the search had been conducted by a probation officer.

5. Probation is of statutory origin. Congress recognized that it has the characteristics of a criminal proceeding by including the statutes pertaining to it in Title 18 of the United States Code, "Crimes and Criminal Procedure," 18 U.S.C. §§ 3651–56. Probation is also governed by Federal Rules of Criminal Procedure 32(e) and (f).

tion of culpability exists, the probationer is constitutionally entitled to the assistance of counsel. In 1970 Congress augmented the constitutional requirements by providing a statutory right to counsel at all federal revocation hearings. *See generally Gagnon v. Scarpelli*, 411 U.S. 778, 781–91, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); 18 U.S.C. §§ 3006A and 3653; Federal Rule of Criminal Procedure 32(f). The similarity between many of the aspects of a criminal trial and a probation revocation proceeding is illustrated by the frequent use of the revocation proceeding as an alternative to trial on new charges against a probationer. *See United States v. Hill*, 447 F.2d 817, 819–20 (7th Cir. 1971) (Fairchild, J., dissenting). It is also illustrated by the court's authority to modify the probationer's sentence.[6]

Consideration of the nature of a probation revocation hearing leads to the conclusion that the application of the exclusionary rule will result in approximately the same potential for injury and benefit as its application in other criminal adjudicative proceedings. The rule's exclusion of some of the evidence about the new charges which form the basis of the complaint about the probationer, the delay incident to suppression hearings, and the rule's effectiveness in deterring future unconstitutional searches are neither significantly more nor less than in other such adjudicative proceedings. Therefore, the weight to be assigned the potential advantages and disadvantages of applying the rule to probation revocation proceedings cannot be ascertained by generalized reference to the pros and cons of the rule—a subject that has been the topic of lively debate from the moment of the rule's promulgation. Instead, an inferior court should conduct the balancing test prescribed by *United States v. Calandra*, 414 U.S. 338, 349, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), by comparing revocation hearings with other instances where the Supreme Court has considered the rule's application.

Such a comparison permits objective appraisal of the rule's deterrent effect in revocation proceedings by considering the Supreme Court's assessment of that effect in other contexts.

The Court has held the rule inapplicable to evidence introduced against a defendant who was not the victim of the search. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and to evidence used to impeach the defendant. *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). These exceptions also apply in probation revocation proceedings.

In refusing to exclude from a federal tax case evidence alleged to have been illegally seized by state officers, the Court noted, "In the complex and turbulent history of the rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *United States v. Janis*, 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976). *Accord, Compton v. United States*, 334 F.2d 212, 215–16 (4th Cir. 1964). In *Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), the Court held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

The Court has also ruled, as we have previously mentioned, that the exclusionary rule does not apply to a grand jury. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Application of the rule in any of these proceedings, the Court reasoned, would have only a marginal or incremental deterrent effect that is outweighed by the rule's impediments.

On the other hand, the Court has consistently applied the exclusionary rule to af-

---

**6.** 18 U.S.C. § 3653 provides that upon the conclusion of a hearing, "the court may revoke the probation and require him [the probationer] to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."

firmative proof offered by the government in state and federal criminal trials. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). And it has extended the rule to a proceeding for forfeiture of an automobile used to violate a criminal law, emphasizing that under such circumstances the forfeiture was clearly a penalty. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 701–02, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

As this brief survey discloses, the Supreme Court has never exempted from the operation of the exclusionary rule any adjudicative proceeding in which the government offers unconstitutionally seized evidence in direct support of a charge that may subject the victim of a search to imprisonment. Indeed, the Court has observed that standing to invoke the exclusionary rule "is premised on a recognition that the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). This appraisal of the rule is relevant to a federal probation revocation hearing, especially when, as frequently happens, the proceedings provide an alternative to federal trial on the new charges. Moreover, unlike the applicant for a writ of habeas corpus, a probationer ordinarily has not had a prior opportunity to exclude the newly found evidence which is offered at the revocation hearing. Nor is he in the position of the victim of a search who at trial can seek exclusion of illegally seized evidence previously presented to the grand jury.

 We conclude therefore that evidence obtained by unconstitutional searches of a probationer's property is inadmissible in a federal probation revocation hearing. We do not, of course, determine whether Workman's probation should be continued or revoked. That decision must be made by

the district court without reliance on the unconstitutionally seized evidence.

The order of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion. Upon remand, the district court should permit the government to amend its complaints if it be so advised.